UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RICARDO GIL-CABRERA,

       Plaintiff,

  -v-                                                               No.  20-CV-9493-LTS-SDA

CITY OF NEW YORK,

       Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

       Plaintiff Ricardo Gil-Cabrera ("Plaintiff" or "Gil-Cabrera") brings this pro se action under 42 U.S.C. § 1983, alleging that defendant City of New York ("Defendant") and several individual officials violated his constitutional rights while he was a pretrial detainee at the Vernon C. Bain Center ("VCBC") by failing to take adequate steps to mitigate the threat of COVID-19.  The Court previously granted a partial motion to dismiss the complaint, which terminated the case as against all of the individual defendants, as well as Mr. Gil-Cabrera's claims pursuant to the Equal Protection Clause of United States Constitution and for punitive damages.  (See docket entry no. 40 (Order Adopting Report & Recommendation).)  The City of New York now moves for summary judgment on the remaining section 1983 claims of deliberate indifference and municipal liability.  (See docket entry no. 48.)  The motion is unopposed.

       The Court has reviewed carefully the submissions in connection with the instant motion.  For the following reasons, Defendant's motion for summary judgment is granted in its entirety.

BACKGROUND[1]

Plaintiff

Mr. Gil-Cabrera was a pretrial detainee at the VCBC from at least September 22, 2020 through December 26, 2020.[2] (Docket entry no. 10 ("Second Amended Complaint" or "SAC") at 4.) The VCBC is a facility operated by the New York City Department of Corrections ("DOC") and Correctional Health Services ("CHS"). (Docket entry no. 50 ("Def. 56.1 St.") ¶ 2.) Mr. Gil-Cabrera alleges that his confinement failed to comply with the COVID-19 safety protocols set by then-Governor Andrew Cuomo and then-Mayor Bill DeBlasio, including those regarding social distancing and capacity restrictions for indoor gatherings. (SAC at 4-5.) He claims that his assigned dorm at the time (Dorm 2-BA) exceeded capacity restrictions and housed approximately 48-50 occupants, even though the normal maximum capacity for Dorm 2-BA is 50 persons. (Id. at 4.) Mr. Gil-Cabrera further alleges that all people housed in the dorm shared sinks, toilets, and showers. (Id.) As for the sleeping arrangements, he claims that the

---

[1] Plaintiff has not filed any submissions since his Second Amended Complaint. Therefore, while the Court recites Plaintiff's allegations to provide relevant background, all facts are drawn from Defendant's submissions, including Plaintiff's deposition testimony, and Defendant's declarations and Local Civil Rule 56.1 statement, to which Plaintiff failed to respond. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); Hernandez v. Coca Cola Refreshments USA, Inc., No. 12-cv-234, 2013 WL 6388654, at *3 (E.D.N.Y. Dec. 6, 2013) ("[I]t is of course fundamental that allegations in a complaint are not evidence that can defeat a motion for summary judgment."). The facts are undisputed unless otherwise noted. All reasonable inferences from the proffered evidence are drawn in favor of Plaintiff, as the nonmovant. See Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

[2] Mr. Gil-Cabrera is presently incarcerated at the Cape Vincent Correctional Facility in Jefferson County, New York. See Incarcerated Lookup, DEP'T OF CORR. AND CMTY. SUPERVISION, https://nysdoccslookup.doccs.ny.gov/.

dorm's beds were three to four inches apart, and three to four feet across from one another, with no dividers or safety nets.  (Id.)  Mr. Gil-Cabrera filed a complaint to 311 regarding these conditions.[3]  (Id.)  Separately, he also alleges that newly admitted occupants were not properly screened for COVID-19 because they were admitted before receiving results of their COVID-19 tests.  (Id.)  Mr. Gil-Cabrera claims that Defendant "intentionally ignore[d] or covered up these acts," and that, due to Plaintiff's asthma, these non-compliant conditions of his confinement frightened him.  (Id. at 5.)

During his deposition, Mr. Gil-Cabrera confirmed that he was alleging only emotional harm and that he did not speak to any physicians or medical staff at the DOC about his concerns.  (See docket entry no. 53-3 ("Pl. Dep. Trans.") at 26:8-10.)  Medical records indicate that Mr. Gil-Cabrera was screened for COVID-19 symptoms seven times and that he was tested for the virus six times while in DOC custody.[4]  (See Def. 56.1 St. ¶¶ 68-69.)  Persons who were housed alongside Plaintiff who experienced COVID-19 symptoms but declined to be tested were quarantined.  (See Pl. Dep. Trans. at 12:13-25, 13:1-8.)  Mr. Gil-Cabrera was advised by medical staff to get the COVID-19 vaccine, which was available to him, but he refused, citing concerns that the vaccine was potentially fatal.  (See id. at 10:16-25, 11:1-4, 26:11-14.)  Plaintiff did not contract COVID-19 while in DOC custody.  (Id. at 12:6-8.)

All persons held in DOC custody, including those at the VCBC, receive an Inmate Handbook upon arriving at a facility.  (See Def. 56.1 St. ¶ 74.)  Among other things, the

---

[3]  Although Mr. Gil-Cabrera indicates that he attached a copy of the 311 complaint as Exhibit A, there is no exhibit attached to the SAC.

[4]  These screenings and tests spanned approximately one year, from March 2020 to February 2021.  The Court notes that the claims in the SAC are limited to the VCBC and the time period between September 22, 2020 and December 26, 2020.

Handbook sets forth the procedures of the Inmate Grievance Resolution Process ("IGRP"), which applies to inmate complaints about conditions within a particular facility. (Id. ¶ 75.) Mr. Gil-Cabrera has not alleged in the SAC, nor has he proffered any evidence, that he filed any grievances while in DOC custody or otherwise made efforts to engage with the IGRP. (See generally SAC at 4-8.)

COVID-19 Protocols at VCBC[5]

Beginning on or around May 4, 2020, all new admissions to VCBC were offered a COVID-19 test. (Def. 56.1 St. ¶ 5.) Persons who agreed to be tested were held in a housing area for newly-admitted individuals with pending COVID-19 test results, and were only transferred to general population housing when they tested negative. (Id.) New admissions who declined testing were quarantined for 10-14 days before being housed. (Id.) Persons who tested positive were removed to a designated area, and any housing area where those persons had been previously housed during the infectious period was designated as an Asymptomatic Exposed (AE) unit. (Id. ¶¶ 50-51.) AE units were maintained as living cohorts for 14 days and persons therein were offered subsequent rounds of testing to identify any cases of COVID-19. (Id. ¶ 52.)

DOC implemented various cleaning and sanitizing protocols, such as cleaning and sanitizing housing units and common spaces once per day, all contact surfaces every two hours, and shower areas three times a day. (Id. ¶ 20.) Soap and other cleaning supplies, including sanitizing solutions, general and floor cleaners, "gentle scrub" and mops, were available in each unit's janitor closet and were provided upon request, except in those housing units where access

---

[5] Additional countermeasures taken by DOC and CHS in response to the COVID-19 pandemic are set forth in the declarations of Tanisha Mills and Patricia Yang. (See docket entry nos. 53 and 54.) The Court only summarizes those countermeasures most relevant to Plaintiff's pending claims.

to those materials presented a security issue.  (Id. ¶ 24; see also Pl. Dep. Trans. at 16:25, 17:1-21.)  DOC did not distribute hand sanitizer to the people in its custody, as sanitizer is largely alcohol based and presents a security concern both due to its flammability and its documented consumption by incarcerated persons.  (Def. 56.1 St. ¶ 25.)  During his deposition, after confirming that he had access to (and often used) cleaning supplies, including soap, to sanitize the dorm area, Mr. Gil-Cabrera complained that he was not provided with alcohol-based soap.  (See Pl. Dep. Trans. at 25:11-20.)  When asked whether alcohol was necessary to combat the COVID-19 virus, Mr. Gil-Cabrera expressed that he did not know.  (See id. at 25:21-24.)

Where possible in dormitory housing units, DOC ensured that there was an empty bed in between people in custody.  (Id. ¶ 31.)  DOC also supplied guidance to individuals to refrain from sitting on other people's beds, and to sleep head to foot if there was not enough separation between beds.  (Id.)  Mr. Gil-Cabrera stated in his deposition that "there was no space to sleep," and that "there was supposed to be one bed occupied and another one empty and it wasn't like that."  (Pl. Dep. Trans. at 25:4-10.)  He later stated that, while he was in DOC custody, the number of people housed in his dorm area would fluctuate, with the highest total being 47, and "as COVID was rising, [it] ended up being 28, something like that."  (Pl. Dep. Trans. at 21:17-21.)

All incarcerated persons and staff were given masks and encouraged to use them.  (Def. 56.1 St. ¶ 34.)  Officers were required to wear masks when inside a jail facility, except when eating or drinking, and failure to do so could result in disciplinary action.  (Id.)  Mr. Gil-Cabrera had access to masks, all correctional officers who came close to him wore masks, and medical staff who examined or treated him wore masks and gloves.  (Id. ¶ 35; see also Pl. Dep. Trans. at 13:9-25, 14:1-25, 15:1-10.)  In January 2021, CHS began offering the COVID-19

vaccine to high-risk detainees and, in March 2021, expanded the offering to all individuals in custody.  (Id. ¶¶ 10-11.)

Procedural History

        Mr. Gil-Cabrera filed his original Complaint with 49 other VCBC detainees against the DOC and several individual defendants.  (Docket entry no. 2.)  On November 9, 2020, the Court severed the matter into separate civil actions.  (See docket entry no. 1.)  Plaintiff filed an Amended Complaint on November 24, 2020.  (Docket entry no. 6.)  The Court then directed Plaintiff to amend his pleading further, and he filed the SAC on January 4, 2021.  Next, on February 18, 2021, the Court entered an order that, inter alia, deemed the SAC amended to substitute the City of New York as a defendant in place of the DOC.  (Docket entry no. 20.)  On April 23, 2021, Defendants filed partial motion to dismiss as to the individual defendants and as to Plaintiff's claims pursuant to the Equal Protection Clause of United States Constitution and for punitive damages.  (Docket entry no. 25.)  Plaintiff did not respond to the motion.  The Court granted the partial motion to dismiss on December 14, 2021.  (Docket entry no. 40 (Order Adopting Report & Recommendation).)

        Discovery closed on December 15, 2021.  Despite being served with requests for production of, inter alia, any grievances or related documents that were sent to DOC and/or CHS, Plaintiff did not provide any such documents or otherwise respond to the requests.  Defendant filed the instant motion for summary judgment on March 30, 2022, see docket entry no. 48, and sent, via first class mail, the requisite Notice to Pro Se Litigants Pursuant to Local Civil Rule 56.2 to Plaintiff that failure to respond to the motion may result in dismissal of the action.  (See docket entry no. 49.)  As explained above, Plaintiff did not respond, and the motion thus is unopposed.

D<span style="font-variant:small-caps">iscussion</span>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson, 477 U.S. at 247–48; Celotex Corp. v. Catrett, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. "The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters, 869 F.3d 92, 98–99 (2d Cir. 2017); see also Fed. R. Civ. P. 56(c)(1). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. Celotex, 477 U.S. at 322–23; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006); PepsiCo, 315 F.3d at 105. Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Notwithstanding Rule 56(e)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, which provide that unrefuted facts will be deemed "admitted," neither Rule may be read to relieve the movant of the burden of establishing entitlement to judgment as a matter of law. Patino v. Brady Parking, Inc., No. 11-cv-3080, 2017 WL 5198192, at *7 (S.D.N.Y. Oct. 31,

2017). In other words, "summary judgment may not be granted on default." Id. (citing Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)).

Thus, where a summary judgment motion is unopposed, the court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that "each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production." Jackson v. Fed. Exp., 766 F.3d 189, 194 (2d Cir. 2014). "A summary judgment motion in a pro se case may be granted as unopposed if: (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." Warren v. Chem. Bank, No. 96-cv-6075, 1999 WL 1256249, at *2 (S.D.N.Y. Dec. 22, 1999) (internal quotation marks and citation omitted).

A court will "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). But a pro se party's "bald assertions, unsupported by evidence, will not overcome a motion for summary judgment." Kennedy v. Arias, No. 12-cv-4166, 2017 WL 2895901, at *7 (S.D.N.Y. July 5, 2017) (internal quotation marks, citation, and alterations omitted).

Administrative Exhaustion

As a threshold matter, Plaintiff's claim for deliberate indifference to the conditions of his confinement is barred for failing to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 USC § 1997e(a).  Plaintiff's action falls within the purview of section 1997e(a) because the Supreme Court has established that "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" Porter v. Nussle, 534 U.S. 516, 532 (2002); see also 18 USC § 3626(g)(2) (defining "civil action with respect to prison conditions" to mean "any civil proceedings arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison[.]").

Because failure to exhaust administrative remedies is an affirmative defense, Defendant "bear[s] the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." Hubbs v. Suffolk Cnty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (internal citations omitted).  Should Defendant meet this burden, it then shifts to Plaintiff to demonstrate that he properly exhausted his claims or show that "other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." Id.  "Exhaustion, even where the facts are disputed, is a matter of law for the Court to decide." Brooks v. Mullen, No. 14-cv-06690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020).

As explained above, Defendant has proffered in a declaration that DOC provides an Inmate Handbook to all persons in its custody, which sets forth a multi-step Inmate Grievance Resolution Program that covers grievances concerning, inter alia, conditions within a facility.[6]

---

[6] Courts in this Circuit also routinely take judicial notice of the IGRP.  See, e.g., Hickman v. City of New York, No. 20-cv-04699-RA-OTW, 2021 WL 3604786, at *3 (S.D.N.Y. Aug. 12, 2021).

(Def. 56.1 St. ¶¶ 74-75.)  Courts have held that "the failure to make use of the IGRP constitutes failure to exhaust under the PLRA."  See, e.g., Blocker v. City of New York, No. 14-cv-7215-PKC, 2015 WL 4002588, at *2 (S.D.N.Y. July 1, 2015).  Making use of the IGRP requires a strict adherence to its steps.  The Supreme Court has established that section 1997e(a) requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal quotation marks omitted).  Plaintiff cannot meet this standard of "proper exhaustion" by, for example, simply alerting "prison officials as to nature of the wrong for which redress is sought."  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007).  Instead, Plaintiff must "take each of the four steps [of the IGRP] to exhaust the administrative grievance process."  Sanders v. City of New York, No. 16-cv-07426-PGG, 2018 WL 3117508, at *4 (S.D.N.Y. June 25, 2018).

Mr. Gil-Cabrera has not carried his burden in the face of Defendant's evidence as to administrative exhaustion.  In his SAC, he proffers in a single allegation that he made a complaint to 311.  (SAC at 4.)  Mr. Gil-Cabrera has not even alleged—let alone provided evidence in the record—that he exhausted his administrative remedies or that such remedies were not, as a matter of fact, made available to him.  Nor does he allege that he filed any grievances or otherwise engaged with IGRP.  During discovery, Mr. Gil-Cabrera also failed to respond to Defendant's requests for production relating to any grievances he may have filed.  Indeed, he submitted no evidence whatsoever.  Courts in this Circuit have recognized that making a 311 call, without engaging in the additional steps of the IGRP, constitutes a failure to satisfy the exhaustion requirements of the PLRA.  See, e.g., Perez v. City of New York, No. 14-cv-07502 LGS, 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015).  In certain limited circumstances, a plaintiff may be excused from the administrative grievance process.  The

*Hemphill* inquiry, as outlined by the Second Circuit, considers whether (1) administrative remedies were not in fact "available to the prisoner," (2) defendant's own actions inhibited exhaustion, or (3) special circumstances justify non-exhaustion. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). There is no evidence in the record to suggest, let alone establish, that Defendant's actions hindered exhaustion. Nor are there any facts sufficient to establish "special circumstances" such that Mr. Gil-Cabrera "reasonably misunderstood the relevant grievance procedures." Giano v. Goord, 380 F.3d 670, 676-77 (2d Cir. 2004). Thus, there is no factual dispute as to Plaintiff's failure to exhaust his administrative remedies.

Separately, a district court may not grant summary judgment in a case involving a pro se litigant unless (1) the court apprises the pro se litigant of failing to respond to the motion, (2) an opposing party has already provided the pro se litigant with the requisite notice, or (3) it is clear that the pro se litigant understands "the nature and consequences of summary judgment." See Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); M.B. # 11072–054 v. Reish, 119 F.3d 230, 232 (2d Cir. 1997). Here, Defendant provided to Plaintiff the requisite Notice to Pro Se Litigants Pursuant to Local Civil Rule 56.2, which included, inter alia, the text of Federal Rule of Civil Procedure 56 and a forewarning that failure to respond may result in dismissal of the action. (See docket entry no. 49.) The history of this case suggests that Mr. Gil-Cabrera was initially proactive, twice amending his complaint in response to the Court's directives, but that he neglected to continue diligently prosecuting his case thereafter and made no submissions, despite being properly served with Defendant's partial motion to dismiss and motion for summary judgment (for which he received an extension to file his opposition) and despite making himself available for a deposition.

In sum, because (1) Plaintiff's failure to exhaust his administrative remedies is undisputed, and (2) Plaintiff received adequate notice that his claims might be dismissed for failure to file an opposition, summary judgment is appropriate as to his deliberate indifference claim.  Since there was a failure to exhaust, the Court need not, and does not, address Mr. Gil-Cabrera's deliberate indifference claim on its merits.  Furthermore, as Plaintiff cannot maintain a section 1983 deliberate indifference claim, it follows that he cannot maintain a claim for municipal liability.  See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Vickers-Pearson v. City of New York, No. 18-cv-08610-KPF, 2020 WL 5732028, at *9 (S.D.N.Y. Sept. 24, 2020) ("[T]here can be no municipal liability without an underlying constitutional violation.") (granting summary judgment).  Thus, summary judgment is also appropriate as to the claim for municipal liability.

## CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion for summary judgment is granted in its entirety.  This Memorandum Order resolves docket entry no. 48.  The Clerk of Court is respectfully directed to enter judgment dismissing case no. 20-cv-9493 and close the case.  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Chambers will mail a copy of this Order to Plaintiff at his address of record.

SO ORDERED.

Dated: New York, New York
March 22, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy mailed to**:

Ricardo Gil-Cabrera
DIN: 21R0667
Cape Vincent Correctional Facility
36560 State Route 12E P.O. Box 599
Cape Vincent NY, 13618-0599